KOEHLER *v.* DETROIT EDISON COMPANY

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.
   One who voluntarily places himself in, or remains in, a position which he knows, or with reasonable care should know, is dangerous, cannot recover for the ensuing injury.

2. SAME—CONTRIBUTORY NEGLIGENCE—REASONABLY PRUDENT MAN.
   Judgment of trial court against administratrix of estate of an experienced crane operator killed on a construction site when he rode a crane from the roof of the building to the ground rather than using a ladder *held,* proper where the decedent, knowing the danger that existed, disregarded warnings, and followed a course of action that a reasonably prudent man would not have undertaken.

Appeal from Wayne, Foley (Thomas J.), J. Submitted Division 1 June 6, 1967, at Detroit. (Docket No. 2,322.) Decided November 29, 1968. Leave to appeal granted May 22, 1969. 382 Mich 755.

Declaration by Anna Koehler, administratrix of the estate of Carl Koehler, against Detroit Edison Company, a New York corporation, Leland Beard, Robert Pankey, and Palombit Construction Company, Inc., for wrongful death. Directed verdict for defendants. Plaintiff appeals. Affirmed.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 38 Am Jur, Negligence §§ 182, 184.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Fischer, Sprague, Franklin & Ford,* for defendant Detroit Edison Company.

*Feikens, Dice, Sweeney & Sullivan,* for Leland Beard.

*Zweig, Taback & Remer,* for Robert Pankey.

THORBURN, J. This is an appeal from a directed verdict at the close of plaintiff's case.

The uncontroverted facts are that on June 27, 1960, plaintiff's decedent husband, Carl Koehler, died of injuries received while in the course of his occupation as a subcontractor on a building project near Memphis, Michigan. Plaintiff, Anna Koehler, appears as administratrix of his estate. Defendants against whom this appeal was taken are Robert Pankey, the operator of a crane on which decedent was riding and from which he fell, Leland Beard, the owner of the crane, and the Detroit Edison Company whose power lines in contact with the decedent may have been the direct cause of death.

The facts construed most favorably to plaintiff follow:

On the day in question the decedent was engaged in working as a crane operator on a construction project known as Maryglade Seminary. An uninsulated Detroit Edison power line ran parallel to the rear of the building, fifty feet from the wall of the building and thirty or more feet from the ground. At the time of the accident the crane was placed between the building and the power lines. Concrete slabs were lifted by the crane from a truck on the ground onto the roof of the building. When the

chain of events that culminated in the decedent's death began, he was on the roof of the seminary. Ladders were available for moving between the roof and the ground. Notwithstanding warning and notice of the danger from the high power line and that the ladders were for safe descent, the decedent chose to ride the crane down as he had done on previous occasions that day. Defendant Pankey, the crane operator, was lowering the empty crane apparatus from the roof to the ground when an ironworker gave him a signal to raise the crane. When the crane apparatus came into defendant Pankey's view he saw decedent riding a cable loop. At this point either the decedent fell from the crane sling after the crane hit the power line shocking the decedent, or the decedent was swung into the power lines. The crane had no safety devices to prevent or neutralize contact with power lines and the lines were not covered with any insulating materials. After defendant Pankey saw the decedent was riding the crane, he took his signals from the decedent. Decedent, an experienced crane operator, assumed the responsibility for stationing the crane and gave directions to defendant Pankey as to its operation.

If the decedent was guilty of contributory negligence as a matter of law, the learned trial judge properly directed a verdict against plaintiff.

One is required to make reasonable use of his faculties of sight, hearing, and of intelligence, to discover dangerous conditions to which he is or may become exposed. *Rice* v. *Goodspeed Real Estate Co.* (1931), 254 Mich 49. Plaintiff's decedent, an experienced crane operator, had to know of the existence of the live uninsulated electrical wire fifty feet from the building and that the crane had no safety device to prevent contact with the wire.

One who voluntarily places himself in, or remains in a position which he knows, or with reasonable care should know, is dangerous, cannot recover for the ensuing injury. *Milauckas* v. *Meyer* (1965), 1 Mich App 500. Plaintiff's decedent, although armed with knowledge of the dangerous conditions, warned not to use the crane sling, and provided with an alternate method of descending by way of a ladder, insisted upon riding the crane sling and exercising control by way of direction over the crane operator defendant Pankey.

"One who knows or in the exercise of ordinary care should have known the existence of danger from which injury might reasonably be anticipated and who by his voluntary acts or omissions exposes himself to such danger is guilty of negligence, if under the circumstances an ordinarily prudent person would not have incurred the risk of injury which such conduct involved." *Rice* v. *Goodspeed Real Estate Company, supra,* p 55.

The minds of reasonable men could not differ on the record herein made. Plaintiff's decedent, in full control of defendant Pankey's actions, knowing the danger that existed, disregarded warnings and should have assumed that injury might reasonably be anticipated. There is not one scintilla of evidence in the record from which a jury could draw a reasonable inference that plaintiff's decedent was free from contributory negligence. To the contrary, the facts establish that to speed the job plaintiff's decedent followed a course of action that a reasonably prudent man would not have undertaken.

Plaintiff's decedent having been guilty of contributory negligence as a matter of law, the judgment

of the trial court is affirmed and costs are awarded to appellees.

J. H. GILLIS, P. J., and MCGREGOR, J., concurred.